IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

_____

UNITED STATES OF AMERICA, <u>ex rel.</u>
ATLAS COPCO COMPRESSORS LLC

    Plaintiff,

v.

RWT LLC and ARCH INSURANCE COMPANY

    Defendants.
_____

)
)
)
)
)
)
)
) Civ. No. 16-00215 ACK-KJM
)
)
)
)
)

<u>ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>

    For the reasons set forth below, the Court DENIES
Defendants' Motion for Summary Judgment and Plaintiff's Motion
for Summary Judgment.

<u>PROCEDURAL BACKGROUND</u>

    On May 4, 2016, Plaintiff Atlas Copco Compressors LLC
("Plaintiff") filed a Complaint against RWT LLC ("RWT") and Arch
Insurance Company ("Arch," and together with RWT, "Defendants").
Plaintiff alleged that Defendants violated the Miller Act, 40
U.S.C. §§ 3131, 3133.

    Both parties have moved for summary judgment and have
filed memorandum, concise statements of fact, responses, and
replies in support of their position.[1]  The Court held a hearing

_____

[1] Plaintiff's filings include its motion for summary
judgment ("Pl. Motion") (ECF No. 32); its separate and concise
(continued . . . )

on both motions on May 15, 2017.

**FACTUAL BACKGROUND**

On February 24, 2014, RWT was awarded a contract by the United States Department of Defense (the "Contract"). Def. CSF, Ex. 1; Pl. Opp. CSF, Ex. C. The Contract required RWT to "provide all labor, materials, supervision, tools, equipment, supplies and transportation necessary to Construct P-089 LPA Satellite Compressor Plant" for a project at the Pearl Harbor Navy Shipyard (the "Project"). Id.

On February 25, 2014, RWT provided a payment bond issued by Arch. Def. CSF, Ex. 2; Pl. Opp. CSF, Ex. D. RWT was the principal and Arch was the surety on the bond. Id. The bond provided, inter alia, that both RWT and Arch were bound

---

statement of material facts in support ("Pl. CSF") (ECF No. 33); its memorandum in opposition to Defendants' motion for summary judgment ("Pl. Opp.") (ECF No. 39); its separate and concise statement of material facts in opposition ("Pl. Opp. CSF") (ECF No. 40); its reply memorandum in support of its motion for summary judgment ("Pl. Reply") (ECF No. 45); and its supplemental concise statement of facts in support of its reply (Pl. Supp. CSF) (ECF No. 46).

Defendants' filings include their motion for summary judgment ("Def. Motion") (ECF No. 35); their separate and concise statement of material facts in support ("Def. CSF") (ECF No. 36); their memorandum in opposition to Plaintiff's motion for summary judgment ("Def. Opp.") (ECF No. 42); their separate and concise statement of material facts in opposition ("Def. Opp. CSF") (ECF No. 43); and their reply memorandum in support of their motion for summary judgment ("Def. Reply") (ECF No. 44).

"jointly and severally . . . for the payment or the sum shown opposite the name of the Surety." Id.

On March 11, 2014, RWT notified Plaintiff that it would be receiving the subcontract for the four air compressors and two air dryers ("compressors and air dryers" or "equipment") that were specified for the Project. Pl. Opp. CSF, Ex. E. On March 13, 2014, Plaintiff provided RWT with a proposal (the "Proposal"), which included a price quotation for the specified equipment and Plaintiff's standard conditions of sale. Def. CSF, Ex. 4; Pl. Opp. CSF, Ex. F. On July 29, 2014, RWT issued a purchase order (the "Purchase Order"), which included general terms and conditions of sale, to Plaintiff to supply compressors and air dryers for the Project in accordance with the Proposal. Def. CSF, Ex. 3.

On August 28, 2014, Plaintiff's Vice President initialed the bottom of each page of the Proposal. Def. Opp. CSF, Ex. 3; Pl. CSF, Kiser Decl. ¶ 6; Pl. CSF, Ex. F. In September 2014, RWT's Project Manager initialed the bottom of each page of the Proposal. Id. Plaintiff then began manufacturing the compressors and air dryers at their facility in Belgium to meet RWT's purchase order. Pl. CSF, Callow Decl. ¶ 5.

In early March 2015, Plaintiff made arrangements for the shipment of the compressors and air dryers from Belgium to

Honolulu, Hawaii.  Id. ¶ 6.  On April 23, 2015, the compressors and air dryers were discharged from the shipment vessel in Honolulu, Hawaii and were ready for pickup on April 24, 2015. Def. CSF, Ex. 5.  When the equipment arrived in Honolulu, RWT arranged and paid for its delivery from the port to Pearl Harbor.  Def. CSF, Raas Decl. ¶¶ 9-10.  On May 11, 2015, RWT's trucking company, Island Movers, took delivery of the compressors and air dryers.  Pl. CSF, Callow Decl. ¶ 6.

On May 12, 2015, Plaintiff issued invoices totaling $2,030,794.52.  Pl. CSF, Ex. G.  On October 30, 2015, RWT tendered a check to Plaintiff for $1,749,009.00, leaving an unpaid principal balance of $281,785.52.  Pl. CSF, Gogic Decl. ¶ 3.

On November 23, 2015, the U.S. Department of Defense suspended work on the Project until February 2016.  Def. Opp. CSF, Ex. 4.  On March 20, 2017, the work was further suspended until July 2017.  Def. Opp. CSF, Ex. 5.

In Defendants' Opposition, Defendants state that they cannot pay the remaining balance until the equipment has been inspected, and consequently accepted, by RWT pursuant to the terms of the Purchase Order.  Def. Opp. at 8 n.2.  Defendants state that RWT will install the equipment and conduct a test to verify that it operates in conformity with the contract specifications as soon as the government lifts the suspension of

work.  Id.  Defendants state that if the equipment passes
inspection, they will accept it and issue the remaining balance
due under the contract.  Id.

**STANDARD**

Summary judgment is proper where there is no genuine
issue of material fact and the moving party is entitled to
judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Rule 56(a)
mandates summary judgment "against a party who fails to make a
showing sufficient to establish the existence of an element
essential to the party's case, and on which that party will bear
the burden of proof at trial."  Celotex Corp. v. Catrett, 477
U.S. 317, 322 (1986); see also Broussard v. Univ. of Cal. at
Berkeley, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial
burden of informing the court of the basis for its motion and of
identifying those portions of the pleadings and discovery
responses that demonstrate the absence of a genuine issue of
material fact."  Soremekun v. Thrifty Payless, Inc., 509 F.3d
978, 984 (9th Cir. 2007) (citing Celotex, 477 U.S. at 323); see
also Jespersen v. Harrah's Operating Co., 392 F.3d 1076, 1079
(9th Cir. 2004).  "When the moving party has carried its burden
under Rule 56 [(a)] its opponent must do more than simply show
that there is some metaphysical doubt as to the material facts
[and] come forward with specific facts showing that there is a

genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586-87 (1986) (citation and internal quotation marks omitted); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." In re Barboza, 545 F.3d 702, 707 (9th Cir. 2008) (citing Anderson, 477 U.S. at 248). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. Matsushita Elec. Indus. Co., 475 U.S. at 587; see also Posey v. Lake Pend Oreille Sch. Dist. No. 84, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor").

## DISCUSSION

### I.    The Miller Act

The Miller Act, 40 U.S.C. §§ 3131 et seq., requires that before a contract in excess of $100,000 for the construction of a federal project is awarded, the contractor must provide a payment bond "for the protection of all persons

6

supplying labor and material in carrying out the work provided

in the contract . . ." 40 U.S.C. § 3131(b). The Miller Act

further provides:

> [e]very person that has furnished labor or
> material in carrying out work provided for
> in a contract for which a payment bond is
> furnished . . . and that has not been paid
> in full within 90 days after the day on
> which the person did or performed the last
> of the labor or furnished or supplied the
> material for which the claim is made may
> bring a civil action on the payment bond for
> the amount unpaid . . .

40 U.S.C. § 3133(b)(1). A claim under the Miller Act must be

brought "no later than one year after the day on which the last

of the labor was performed or material was supplied by the

person bringing the action." 40 U.S.C. § 3133(b)(4). The

Miller Act is "highly remedial in nature" and therefore

"entitled to a liberal construction and application in order

properly to effectuate the Congressional intent to protect those

whose labor and materials go into public projects." Clifford F.

MacEvoy Co. v. United States ex rel. Calvin Tomkins Co., 322

U.S. 102, 107 (1944); see United States ex rel. Air Control

Techs., Inc. v. Pre Con Indus., Inc., 720 F.3d 1174, 1178 (9th

Cir. 2013).

## II. Defendants' Motion for Summary Judgment

Defendants assert that Plaintiff's allegation was not

brought within the statute of limitations required by the Miller

Act.  Plaintiff filed its Complaint on May 4, 2016.  For
Plaintiff's suit to be timely, Defendants must have supplied
material on or after May 4, 2015.

In their Motion, Defendants argue that the equipment
was supplied at the latest on April 23, 2015.[2]  Defendants
provide two pieces of evidence to support this assertion.
First, Defendants state that Plaintiff's Standard Conditions of
Sale in the Proposal provide that "[p]roducts shipped from
outside the United States are delivered F.O.B. point of entry"
and that for risk of loss "delivery shall be deemed to be
complete upon delivery to a private or common carrier or upon
moving into storage, whichever occurs first . . . at the point
of entry for Products shipped outside the continental United
States."  Def. CSF, Ex. 4 at 27.  To show that the equipment was
shipped from outside the United States, Defendants cite to the
Declaration of Paul Callow, Plaintiff's employee, which states
that the equipment was manufactured in Belgium and shipped from
Belgium to Honolulu.  Pl. CSF, Callow Decl. ¶¶ 5-6.

Second, Defendants provide the Matson current vessel
reminder which shows that the equipment was discharged from the

_____

[2] In their Reply, Defendants alter their initial argument,
stating that the equipment was supplied on May 3, 2015 at the
latest, which is the last date that the equipment was available
for pickup without incurring storage fees.  Def. Reply at 7.
They point to the Matson current vessel reminder to support this
assertion.  See Def. CSF, Ex. 5.

8

shipment vessel on April 23, 2015 at 9:48 a.m. and ready for pickup on April 24, 2015. Def. CSF, Ex. 5. Defendants note that when the equipment arrived in Honolulu, RWT arranged and paid for its delivery from the port to Pearl Harbor.[3] Def. CSF, Raas Decl. ¶¶ 9-10. Notably, however, in their Motion, Defendants provide no legal authority to support their assertion that the materials were supplied when they were delivered to the port in Honolulu. Defendants provide no authority regarding the meaning of "supplied" under the Miller Act or the meaning of key terms related to the equipment's delivery in the parties' agreement.[4]

Plaintiff does not dispute these underlying facts. However, Plaintiff argues that Defendants have failed to meet their burden to show that the materials were supplied when they were delivered to the port in Honolulu. Plaintiff instead asserts that the earliest the materials were supplied was when RWT's trucking company took delivery of the equipment on May 11, 2015. The Court agrees.

In its Opposition, Plaintiff states that the Court must follow the parties' contract terms, as interpreted

---

[3] On May 11, 2015, RWT's trucking company, Island Movers, took delivery of the compressors and air dryers. Pl. CSF, Callow Decl. ¶ 6.

[4] In their Reply, Defendants discuss the meaning of the term F.O.B. in the parties' agreement.

according to the provisions of the Uniform Commercial Code ("U.C.C."), to determine whether its claim is time-barred.[5]  In their Reply, Defendants use the parties' contract terms and the U.C.C. to rebut Plaintiff's arguments.  The Standard Conditions of Sale in the Proposal has a provision related to delivery and risk of loss, which discusses when delivery is deemed complete under the agreement.  However, neither of the contracts implicated here—the Standard Conditions of Sale in the Proposal nor the General Terms and Conditions of Sale in the Purchase Order—have a provision relating to when a good is "supplied" or when a claim under the agreement can be filed.  Def. CSF, Exs. 3, 4.

Although the issues are somewhat similar, the question of when the equipment was delivered under the parties' agreement is not the same as the question of when the equipment was supplied according to the Miller Act.  Cf. United States ex rel. Suard Barge Servs., Inc. v. Weeks Marine, Inc., No. CIV. A. 99-1006, 1999 WL 412429, at *3 (E.D. La. June 17, 1999) (examining the parties' contract which stated that the vessel would be

_____

[5] The Court notes that neither of the parties has provided and the Court is unaware of case law discussing the U.C.C. to interpret the meaning of "supplied" under the Miller Act.  The Court further notes that the parties have not presented and the Court is unaware of a means for tolling the statute of limitations based on Defendants' partial payment.

"supplied" until it was returned to Plaintiff's dock to determine the limitations period under the Miller Act).

Therefore, the issue before the Court is not one of contract interpretation but instead a question of the Miller Act's statutory construction.  See United States ex rel. Henderson v. Nucon Const. Corp., 49 F.3d 1421, 1423 (9th Cir. 1995) ("[D]efendants argue Arizona law controls the question of whether the general contractor is an indispensable party . . . because we apply state contract law to interpret contracts underlying Miller Act claims.  This argument misses the mark. The issue before us is not one of contract interpretation.  We are called upon to interpret the Miller Act." (internal citations omitted)); see also F.D. Rich Co. v. United States ex rel. Indus. Lumber Co., 417 U.S. 116, 127 (1974) ("The Miller Act provides a federal cause of action, and the scope of the remedy as well as the substance of the rights created thereby is a matter of federal not state law.").

Neither party discusses the central legal issue related to Defendants' Motion: when a good is "supplied" under the Miller Act's statute of limitations provision.  The word "supplied" is not defined in the Miller Act and therefore is entitled to its ordinary meaning.  See Ramona Equip. Rental, Inc. ex rel. United States v. Carolina Cas. Ins. Co., 755 F.3d 1063, 1069 n.5 (9th Cir. 2014); see also FDIC v. Meyer, 510 U.S.

471, 476 (1994) ("In the absence of [a definition in the statute], we construe a statutory term in accordance with its ordinary or natural meaning."). In the context of this provision, the Court finds that the plain meaning of "supply" is to provide or furnish someone with something and to put something into someone's possession for use or consumption. The Court also notes that the dictionary definition of "supply" is to provide or furnish with. Webster's Third New International Dictionary 2297 (2002).

The parties have not presented and the Court is unaware of legislative history or case law discussing the meaning of "supplied" under Miller Act's statute of limitations in regard to the specific issue before the Court.[6] However, the

_____

[6] The Court notes that the most similar case addressing the issue relates to whether goods can be "furnished" under the Miller Act when they were tendered and accepted but not actually delivered. In United States ex rel. Dragone Bros. Inc. v. Moniaros Contracting Corp., Defendants argued that the materials were supplied on the last date they were delivered to the jobsite in November 1992. 882 F. Supp. 1267, 1271-72 (E.D.N.Y. 1995). Plaintiff, however, discussed case law which says that actual delivery to the jobsite is not essential to recovery under the Miller Act. Id. Under this authority, Plaintiff argued that the statute of limitations did not begin to run until December 1992 and January 1993 when delivery of the remaining materials was tendered and Defendants accepted the materials and made delivery arrangements. Id. at 1272-73.
The court agreed with Plaintiff, citing authority for the proposition that the materials do not have to be delivered to the jobsite to be supplied. Id. The court also found that its holding was a liberal interpretation of the Miller Act, in keeping with the Act's broad remedial scope. Id. at 1273. (continued . . . )

12

Court finds that principles developed in case law interpreting the notice provision of the Miller Act shed light on this issue.[7] See United States ex rel. Pippin v. J.R. Youngdale Const. Co., 923 F.2d 146, 149 (9th Cir. 1991) (examining principles developed in cases which have considered when the Miller Act's notice period commences to decide when the Miller Act's limitations period begins "because the language in the notice provision is substantially similar to the language relating to the limitations period").

---

The Court finds that this case differs from Moniaros Contracting Corp. because the issue is not whether the goods were supplied when they were delivered to the jobsite, and Defendants never accepted the goods when delivery was tendered. The Court also finds that a liberal interpretation of the Miller Act requires a different result here.

[7] The notice provision requires:

> A person having a direct contractual relationship with a subcontractor but no contractual relationship . . . with the contractor furnishing the payment bond may bring a civil action on the payment bond on giving written notice to the contractor within 90 days from the date on which the person did or performed the last of the labor or furnished or supplied the last of the material for which the claim is made . . .

40 U.S.C. § 3133(b)(2). Plaintiff states that it was the subcontractor to the prime contractor, as opposed to a mere supplier to a subcontractor, and therefore was not required to give notice under the Miller Act. Pl. Motion at 14. Plaintiff also states that it gave notice of its claim as a precautionary measure on July 2, 2015. Id.

The only case discussing a similar issue under the notice provision of the Miller Act held that materials are supplied, _inter alia_, "at some point where title to the materials passes from the seller to the purchaser." _United States ex rel. Eng'g & Equip. Co. v. Wyatt_, 174 F. Supp. 260, 261 (N.D. Fla. 1959). Recognizing the dearth of controlling precedent and that the Miller Act should receive a liberal construction to effectuate its purpose, the court looked to notice provisions in mechanics lien statutes to determine the meaning of "furnished or supplied" under the Miller Act. _Id._ The Court finds this analysis proper because "[t]he Miller Act simply provides the equivalent of a mechanic's lien." _K-W Indus., a Div. of Assocs. Tech., Ltd. v. Nat'l Sur. Corp._, 855 F.2d 640, 643 (9th Cir. 1988); _see also_ _J. W. Bateson Co. v. U.S. ex rel. Bd. of Tr. of Nat'l. Automatic Sprinkler Indus. Pension Fund_, 434 U.S. 586, 602 (1978) (stating that the Miller Act "stands in lieu of the mechanic's lien statute" for projects constructed by governmental agencies).

The Court further finds that under the facts of this case, expanding the date for when a good is supplied provides a "liberal construction and application" of the Miller Act and "properly . . . effectuate[s] the Congressional intent to protect those whose labor and materials go into public projects." _Technica LLC ex rel. United States v. Carolina Cas._

14

Ins. Co., 749 F.3d 1149, 1152 (9th Cir. 2014); see also Ramona Equip. Rental, Inc. ex rel. United States v. Carolina Cas. Ins. Co., 755 F.3d 1063, 1069 (9th Cir. 2014) ("'[T]he purpose of the overall statute . . . is to provide recovery for suppliers who have provided materials but not received compensation.'" (quoting United States ex rel. Water Works Supply Corp. v. George Hyman Const. Co., 131 F.3d 28, 34 (1st Cir. 1997))).

Thus, under the Court's interpretation of the statute's plain meaning and the related case law, the earliest the goods were supplied was May 11, 2015, when RWT's trucking company took delivery of the shipment. Pl. CSF, Callow Decl. ¶ 6; Pl. Opp. CSF, Supp. Callow Decl. ¶ 7. The General Terms and Conditions of Sale in the Purchase Order support this conclusion. The terms state, "Title of Goods shall pass to [RWT] upon receipt by it of the Goods at the designated destination." Def. CSF, Ex. 3 at 3.

The risk of loss provision in Plaintiff's Standard Conditions of Sale also supports the Court's conclusion. Under that provision, "delivery shall be deemed to be complete upon delivery to a private or common carrier or upon moving into storage, whichever occurs first . . . at the point of entry for Products shipped outside the continental United States." Def. CSF, Ex. 4 at 27. Given that neither party has provided evidence that the equipment was moved into storage, delivery

would not be complete until RWT's trucking company took delivery

of the equipment at the port on May 11, 2015.   In addition,

Plaintiff did not issue invoices for the equipment until May 12,

2015, a day after RWT's trucking company took delivery of the

shipment.   Pl. CSF, Ex. G.   This indicates that payment was not

due, and therefore the equipment was not supplied, until

Defendants took delivery of it.   Accordingly, the Court finds

that the statute of limitations does not bar Plaintiff's Miller

Act claim.[8]

### III. Plaintiff's Motion for Summary Judgment

#### a. Whether Plaintiff Has Satisfied the Elements of a Miller Act Claim

Plaintiff moves for summary judgment on the basis that

it has satisfied the elements of its Miller Act claim.   To

establish a Miller Act claim, Plaintiff must demonstrate: (1)

---

[8] In their Opposition to Plaintiff's Motion, Defendants
state that the first element of a Miller Act claim requires that
"the materials were supplied in prosecution of the work provided
for in the contract."   Def. Opp. at 4 (citing United States ex
rel. Martin Steel Constructors, Inc. v. Avanti Constructors,
Inc., 750 F.2d 759, 761 (9th Cir. 1984)).   Defendants then state
that the "goods must be both delivered and accepted" to
establish that they were "supplied."   Id. at 5 (citing Avanti
Constructors, 750 F.2d at 761).

As discussed herein, the Court does not agree with
Defendants' interpretation of Avanti Constructors.   However, the
Court notes that in making this argument, Defendants essentially
concede their statute of limitations argument.   Under
Defendants' interpretation of the meaning of "supplied," the
equipment still has not been "supplied" to Defendants because it
has not been accepted and therefore the limitations period has
not yet started to run.

the materials were supplied in prosecution of the work provided for in the contract; (2) Plaintiff has not been paid; (3) Plaintiff had a good faith belief that the materials were intended for the specified work; and (4) the jurisdictional requisites were met. United States ex rel. Hawaiian Rock Prod. Corp. v. A.E. Lopez Enterprises, Ltd., 74 F.3d 972, 975 (9th Cir. 1996); United States ex rel. Martin Steel Constructors, Inc. v. Avanti Constructors, Inc., 750 F.2d 759, 761 (9th Cir. 1984). Defendants do not dispute that Plaintiff has established the second and third elements of its Miller Act claim.[9] Defendants argue that the fourth element has not been met solely on the basis that Plaintiff's claim is untimely. As discussed above, the Court finds that Plaintiff's claim is timely.

In regard to the first element, Defendants, based on their interpretation of Avanti Constructors, argue that the goods must be both delivered and accepted to satisfy that they were "supplied" under the first element of a Miller Act claim. Def. Opp. at 5. Defendants argue that they have not accepted the equipment because they have not had an opportunity to inspect it as required under the contract between the parties.

_____

[9] For the second element, Defendants state that they have not paid the remaining $281,785.52 under the contract. Def. Opp. at 4. For the third element, Plaintiff had a good faith belief that the materials were intended for the specified work as they were manufactured specifically for the Project. Pl. CSF, Kiser Decl. ¶ 8.

17

The Court does not agree with Defendants' interpretation of
Avanti Constructors.  The Ninth Circuit does not directly state
or imply that the goods must be both delivered and accepted to
establish that they were "supplied" under the first element of a
Miller Act claim.  Avanti Constructors, 750 F.2d at 761.
Therefore, the Court finds that Plaintiff has satisfied the
first element.  Apart from Defendants argument based on Avanti
Constructors, there is no suggestion that Plaintiff did not
supply the equipment for the Project.  In fact, Defendants'
partial payment demonstrates Defendants' belief that the
compressors and air dryers were supplied.

     Although there is a dearth of case law regarding
whether the materials must be accepted to establish Miller Act
liability, the Court finds that under the circumstances of this
case, pursuant to the parties' contract, Plaintiff must
demonstrate that the contract provision regarding inspection of
the equipment has been satisfied to establish a Miller Act
claim.  Cases have required proof of compliance with contract
terms to establish Miller Act liability.  See, e.g., Jefferson
Const. Co. v. United States ex rel. of Bacon, 283 F.2d 265, 267
(1st Cir. 1960) (holding that failure to plead or prove
compliance with the underlying contract and fulfillment of
conditions precedent therein precluded summary judgment); United
States ex rel. Purity Paint Products Corp. v. Aetna Casualty &

Surety Co., 56 F. Supp. 431, 432 (D. Conn. 1944) (holding that a supplier of paint to a subcontractor "must prove not only that he furnished [material] but also that the [material] furnished was in accordance with his contract").[10]

In addition, to hold that Plaintiff is entitled to recover under the Miller Act, even though Defendants have not had an opportunity to inspect and accept the equipment, would result in an outcome that the Court does not think Congress intended under the Miller Act. Such a ruling could encourage suppliers to provide materials that do not meet the specifications of the contract and still be able to bring suit on the bond and could render the prime contractor's right to inspect and accept the materials meaningless.

As set forth in the General Terms and Conditions of Sale in the Purchase Order, RWT "shall have a reasonable time after receipt of [the equipment] and before payment to inspect

---

[10] The Court notes that contrary authority exists. See U.S. ex rel. Patton Contractors, Inc. v. Innovative Performance Contracting, Inc., No. 3:13-CV-2198-D, 2014 WL 4798449, at *7 (N.D. Tex. Sept. 26, 2014) (holding that while failure to satisfy condition precedent is a state-law defense to a breach of contract claim, it cannot be used to avoid liability under the Miller Act). However, the Court finds Innovative Performance Contracting distinguishable because the condition precedent involved an arbitration clause, which precluded the subcontractor from being able to bring a legal claim before a decision from an arbitrator. Here, the inspection provision is not a condition precedent and does not directly involve when and whether Plaintiff can bring a claim.

[it] for conformity hereto, and performance shall not be deemed accepted until [RWT] has run an adequate test to determine whether the [the equipment] conform[s] to the specifications hereof."[11]  Def. Opp. CSF, Ex. 2 at 3.  Plaintiff has not disputed that RWT would have to install the equipment before it could inspect it and that RWT has not had an opportunity to inspect and test the equipment after its receipt.[12]

Because the Department of Defense issued suspension of work orders at the Project, RWT has been prevented from inspecting and testing the equipment and therefore has been unable to accept the compressors and air dryers.[13]  Def. Opp. CSF, Exs. 4-5.  Under the force majeure provision, "neither party shall be liable for any failure to perform . . . caused by circumstances beyond its control . . . including . . . government action."  Def. Opp. CSF, Ex. 2 at 3.  Under this

---

[11] The inspection provision further states, "If performance tendered does not wholly conform with the provisions hereof, [RWT] shall have the right to reject such performance. Nonconforming goods will be returned to [Atlas] . . . and risk of loss will pass to [Atlas] upon [RWT's] delivery to the common carrier."  Def. Opp. CSF, Ex. 2 at 3.

[12] Plaintiff argues that the test certificates it provided to Defendants were sufficient to meet this provision's requirements.

[13] Atlas has not provided evidence for the Court to conclude that RWT had an opportunity to install the equipment and test it during the time between when the equipment was delivered and the first suspension order and any potential time between the two suspension orders.

provision, therefore, Defendants should not be held accountable for their inability to inspect the equipment.

Furthermore, Defendants have not otherwise accepted the goods since they received them.  Contrary to Plaintiff's argument, Defendants' partial payment of $1.749 million does not constitute acceptance pursuant to the General Terms and Conditions of Sale in the Purchase Order.  See Def. Opp. CSF, Ex. 2 at 2 ("Payment shall not constitute acceptance.").  Defendants have stated that they will tender payment as soon as they are able to install the equipment and verify that it operates in conformity with the contract specifications.  Def. Opp. at 8 n.2.  Therefore, the Court finds that Plaintiff has not met its burden to establish Defendants' liability under the Miller Act.

In its Reply, Plaintiff argues that applicable law under the Miller Act may supersede specific contractual provisions.  First, Plaintiff argues that a supplier may recover under the Miller Act even when the material it supplied has not been incorporated into the project.  Although this proposition is "well-established . . . [in] Miller Act cases," it does not address the issue here: whether Plaintiff can establish Miller Act liability, even though Defendants have been unable to accept the materials.  United States ex rel. Carlson v. Cont'l Cas. Co., 414 F.2d 431, 433 (5th Cir. 1969).

Second, Plaintiff argues that a contractual provision in a subcontract can only prevent a subcontractor from pursuing a Miller Act remedy for a completed delivery of materials when the provision amounts to a clear and explicit waiver of the subcontractor's Miller Act rights. Plaintiff cites two cases to support this proposition: United States ex rel. Walton Tech., Inc. v. Weststar Eng'g, Inc., 290 F.3d 1199 (9th Cir. 2002) and United States ex rel. Youngstown Welding & Eng'g, Co. v. Travelers Indem. Co., 802 F.2d 1164 (9th Cir. 1986).

In Weststar Eng'g, defendants contended that because the "pay when and if paid" clause in the parties' settlement agreement had not been satisfied, since the Navy had not paid the prime contractor, there were no "sums justly due" for which plaintiff was entitled to recover under the Miller Act. 209 F.3d at 1205. The court held that the "paid when and if paid clause" was invalid because it would impact the timing of recovery and therefore preclude a subcontractor from exercising its rights in accordance with the express terms of the Act. Id. at 1207. The Court further held that parties could not preclude a subcontractor's rights under the Miller Act absent of a "clear and explicit" waiver of those rights. Id. at 1208-09.

In Travelers Indem., the court examined whether language in the parties' contract constituted a waiver of the supplier's rights to bring a claim under the Miller Act. 802

F.2d at 1165-66.  However, neither of these cases addresses the specific issue here, which as previously discussed, does not concern a "paid when and if paid" clause or whether the contract language constituted a waiver of the supplier's right to bring a Miller Act claim.  Furthermore, in this case, the inspection provision does not directly controvert the Miller Act's terms or discuss the timing of recovery.

Third, Plaintiff argues that under the agreement the risk of loss has been transferred to Defendants and any inability to complete the installation constitutes a loss that Defendants should bear.  However, the risk of loss provision does not apply to the circumstances here.  Neither of the parties claims that the compressors or air dryers were lost, stolen, damaged, or destroyed.  The Court, therefore, does not find this argument persuasive.  Accordingly, the Court finds that under the facts of this case, delivery and acceptance of the equipment is required to establish Plaintiff's Miller Act claim.[14]

---

[14] Because the Court denies Plaintiff's Summary Judgment Motion, the Court declines to address the following issues: (1) whether Plaintiff is entitled to prejudgment interest; and (2) whether Plaintiff is entitled to attorneys' fees.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion for Summary Judgment is DENIED, and Plaintiff's Motion for Summary Judgment is DENIED.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, May 17, 2017.



_____
Alan C. Kay
Sr. United States District Judge

<u>Atlas Copco Compressors LLC v. RWT LLC et al.</u>, Civ. No. 16-00215, Order Denying Defendants' Motion for Summary Judgment and Denying Plaintiff's Motion for Summary Judgment