IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

_____
                                  )
UNITED STATES OF AMERICA, <u>ex rel.</u>  )
ATLAS COPCO COMPRESSORS LLC        )
                                  )
                Plaintiff,        )
                                  )
v.                                )  Civ. No. 16-00215 ACK-KJM
                                  )
RWT LLC and ARCH INSURANCE COMPANY )
                                  )
                Defendants.       )
_____)

## <u>ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION AND GRANTING PLAINTIFF'S MOTION FOR INTERLOCUTORY APPEAL AND STAY PENDING THAT APPEAL</u>

For the reasons set forth below, the Court denies Plaintiff's Motion for Reconsideration, ECF No. 51.  The Court grants Plaintiff's Motion for Interlocutory Appeal and Stay Pending that Appeal, ECF No. 51.

### <u>BACKGROUND</u>

On May 4, 2016, Plaintiff Atlas Copco Compressors LLC ("Plaintiff") filed a Complaint against RWT LLC ("RWT") and Arch Insurance Company ("Arch," and together with RWT, "Defendants"). Plaintiff alleged that Defendants violated the Miller Act, 40 U.S.C. §§ 3131, 3133.  The alleged violation was based on a subcontract in which Plaintiff agreed to supply RWT four compressors and two air dryers (the "equipment") for a U.S. Department of Defense project at Pearl Harbor.

On May 17, 2017, the Court issued an Order denying

1

Defendants' Motion for Summary Judgment and denying Plaintiff's Motion for Summary Judgment ("the May 17, 2017 Order").  ECF No. 50.  The Court incorporates the procedural and factual background as well as the defined terms of the May 17, 2017 Order.

On May 30, 2017, Plaintiff filed a Motion for Reconsideration or Alternatively for Interlocutory Appeal and Stay Pending that Appeal ("Motion") pursuant to Federal Rule of Civil Procedure 59(e), Local Rule 60.1, and 28 U.S.C. § 1292(b).  ECF No. 51.  In the May 17, 2017 Order, the Court held that Plaintiff did not meet the requirements necessary to establish its Miller Act claim.  May 17, 2017 Order at 21.  Plaintiff's Motion for Reconsideration recasts the central issue to be whether the inspection and force majeure provisions in the General Terms and Conditions of Sale in the Purchase Order constituted a waiver of Plaintiff's Miller Act rights.

Defendants filed a Memorandum in Opposition to Plaintiff's Motion for Reconsideration ("Opposition") on June 13, 2017.  ECF No. 53.  On June 27, 2017, Plaintiff filed its Reply to Defendants' Opposition ("Reply").  ECF No. 54.  Pursuant to Local Rule 7.2(d), this matter is suitable for disposition without a hearing.

## STANDARD

### I.    Reconsideration

A party may ask the court to reconsider and amend a previous order pursuant to Federal Rule of Civil Procedure 59(e).  White v. Sabatino, 424 F. Supp. 2d 1271, 1274 (D. Haw. 2006) (Kay, J.).  Rule 59(e) offers "an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources."  Carroll v. Nakatani, 342 F.3d 934, 945 (9th Cir. 2003) (internal quotation marks and citation omitted). In the Ninth Circuit, a successful motion for reconsideration must accomplish two goals.  First, "a motion for reconsideration must demonstrate some reason why the court should reconsider its prior decision."  Na Mamo O 'Aha 'Ino v. Galiher, 60 F. Supp. 2d 1058, 1059 (D. Haw. 1999).  Second, it "must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision."  Id.

Courts have established three grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice.  Allstate Ins. Co. v. Herron, 634 F.3d 1101, 1111 (9th Cir. 2011); Mustafa v. Clark County Sch. Dist., 157 F.3d 1169, 1178-79 (9th Cir. 1998).  The District of Hawaii has implemented these standards in Local Rule 60.1.

Mere disagreement with a previous order is an insufficient basis for reconsideration. See Leong v. Hilton Hotels Corp., 689 F. Supp. 1572, 1573 (D. Haw. 1988) (Kay, J.). In addition, a Rule 59(e) motion for reconsideration may not present evidence or raise legal arguments that could have been presented at the time of the challenged decision. See Kona Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000). "Whether or not to grant reconsideration is committed to the sound discretion of the court." Navajo Nation v. Confederated Tribes and Bands of the Yakama Indian Nation, 331 F.3d 1041, 1046 (9th Cir. 2003).

## II. Interlocutory Appeal

Certification for interlocutory appeal is appropriate where: (1) the order involves a controlling question of law; (2) a substantial ground for difference of opinion exists; and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b).

A movant seeking an interlocutory appeal has a heavy burden to show that "exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." Coopers & Lybrand v. Livesay, 437 U.S. 463, 475 (1978) (internal quotation marks and citation omitted); see also James v. Price Stern Sloan, Inc., 283 F.3d 1064, 1067 n. 6 (9th Cir. 2002) ("Section 1292(b)

is a departure from the normal rule that only final judgments are appealable, and therefore must be construed narrowly.”). Section 1292(b) is only to be used “in exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation.”  In re Cement Antitrust Litig., 673 F.2d 1020, 1026 (9th Cir. 1982) (citation omitted).  “A court has substantial discretion whether to grant a party’s motion for certification.”  Pitts v. Sequeira, Civil No. 11-00281 LEK/RLP, 2014 WL 346523, at *2 (D. Haw. Jan. 29, 2014) (citation omitted).

## DISCUSSION

### I.  Motion for Reconsideration

Plaintiff moves for reconsideration to correct clear errors in the Court’s May 17, 2017 Order and prevent manifest injustice that would result from those errors.  Motion at 1.

#### a. Clear Error

Specifically, Plaintiff claims that the Court made the following errors: (1) failing to find Comment to Section 2.5.1 in the Proposal, as opposed to the General Terms and Conditions of Sale in the Purchase Order, controlling as a matter of law; and (2) failing to find United States ex rel. Walton Tech., Inc. v. Weststar Eng’g, Inc., 290 F.3d 1199 (9th Cir. 2002) controlling authority.

However, in making these arguments, Plaintiff simply

rehashes the same arguments—albeit with a different "spin"—that it initially presented.[1]  The Ninth Circuit has made clear that a motion for reconsideration is properly denied when it presents arguments that were already raised in the prior motion.  See Backlund v. Barnhart, 778 F.2d 1386, 1388 (9th Cir. 1985); see also United States v. Westlands Water Dist., 134 F. Supp. 2d 1111, 1131 (E.D. Cal. 2001) (stating that a motion for reconsideration is not a vehicle to rehash arguments previously presented).

To the extent that Plaintiff's arguments can be construed as not previously raised, the Court still cannot grant Plaintiff's Motion because "[a] Rule 59(e) motion may not be used to raise arguments . . . for the first time when they could reasonably have been raised earlier in the litigation."  Kona

---

[1] See Plaintiff's Reply Memorandum on its Motion for Summary Judgment (ECF No. 45) at 1-2 ("Through its Proposal . . . Atlas Copco stated the terms under which it would be supplying the air compressors and air dryers to RWT . . . RWT accepted those terms . . . the express provision said that RWT would be receiving certificates of Atlas Copco's 'standard factory performance test' for each compressor."); id. at 11-12 ("For a contractual provision in a subcontract/supply contract to prevent a subcontractor or supplier from pursuing its Miller Act remedy . . . for a completed delivery of materials or equipment, the subject provision must amount to a 'clear and explicit waiver of the subcontractor/supplier's Miller Act rights.'  Such is not the case here."  (citing United States ex rel. Walton Tech., Inc. v. Weststar Eng'g, Inc., 290 F.3d 1199 (9th Cir. 2002); United States ex rel. Youngstown Welding & Eng'g, Co. v. Travelers Indem. Co., 802 F.2d 1164 (9th Cir. 1986))).

6

Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000) (emphasis in original); see Carroll v. Nakatani, 342 F.3d 934, 945 (9th Cir. 2003) (holding that it is improper to present new legal theories in a motion for reconsideration for the first time when they could reasonably have been raised earlier in the litigation); Reliance Ins. Co. v. Doctors Co., 299 F. Supp. 2d 1131, 1154 (D. Haw. 2003), aff'd sub nom. Reliance Ins. Co. v. Doctors Co., 132 F. App'x 730 (9th Cir. 2005) ("A motion for reconsideration is not a proper mechanism for presenting new legal theories that the movant failed to raise with respect to the underlying motion for summary judgment."). Plaintiff fails to offer any reason why the arguments it offers could not have been raised before. Therefore, the Court denies Plaintiff's Motion because the arguments it presents were previously raised or could have been raised earlier. In addition, even if the Court were to consider these arguments, as discussed in detail herein, Plaintiff's Motion still fails.

> ### i. Whether Comment to Section 2.5.1 of the Proposal Controls

First, Plaintiff argues that the Comment to Section 2.5.1 of the Proposal, rather than the General Terms and Conditions of the Purchase Order, controls because between boiler plate terms and the specific terms of the Proposal, the latter should control as a matter of contract law. Plaintiff

7

cites to two cases—Bank of Commerce v. Hoffman, 829 F.3d 542 (7th Cir. 2016) and Aramony v. United Way of Am., 254 F.3d 403, 413-14 (2d Cir. 2001)—to support this proposition.  In Hoffman, the court examined one settlement agreement that had conflicting terms.  On the one hand, a provision in the settlement agreement absolved defendant of liability arising from some but not all of the properties at issue.  829 F.3d at 546-47.  On the other hand, the same agreement had a provision that released defendant from all liabilities.  Id. at 547.  The court held that the contract was ambiguous and examined extrinsic evidence and the rules of construction to determine the contract's specific meaning.  Id. at 547-549.  The court, following Illinois state law, ultimately held that where general language is inconsistent and conflicts with specific language, the specific language controls.  Id. at 548-49.

In Aramony, defendant argued that the district court erred in interpreting the terms of an ERISA-governed pension plan as ambiguous.  254 F.3d at 410.  The court examined the general provision set forth in Article I under the caption "Purpose of the Plan," which said that the purpose was "to provide a mechanism for securing the pension benefit promises made to . . . highly compensated key employees who may receive relatively smaller retirement benefits under the existing pension arrangement than rank and file employees will receive as

a result of limitations imposed by the Internal Revenue Code . . ." Id. at 412.  The court held that this general purpose clause did not create ambiguity in the contract because of another more specific section of the plan.  Id. at 412-13.  The court drew upon, inter alia, the "fundamental rule of contract construction that 'specific terms and exact terms are given greater weight than general language.'"  Id. at 413 (citing Restatement (Second) of Contracts § 203(c) (1981)).  The court further held that even where there is no "true conflict" between two provisions, "'specific words will limit the meaning of general words if it appears from the whole agreement that the parties' purpose was directed solely toward the matter to which the specific words or clause relate.'"  Id. at 413-14 (citing 11 Richard A. Lord, Williston on Contracts § 32:10, at 449 (4th ed. 1999)).  "Contracts would offer very little protection to their signatories if ambiguities of the sort found in the purpose clause could take precedence over carefully spelled out terms." Id. at 413.

        The Court finds neither Hoffman nor Aramony persuasive here for several reasons.  First, and most important, differing from Hoffman, there is no conflict between the two provisions in the contracts in the present case.  Comment to Section 2.5.1 of the Proposal states that, "Atlas Copco is offering its standard factory performance test with certificate for each compressor."

Plaintiff CSF, Ex. F (ECF No. 33-10) at 17.[2]  The General Terms
and Conditions of Sale in the Purchase Order provide that RWT
"shall have a reasonable time after receipt of [the equipment]
and before payment to inspect [it] for conformity hereto, and
performance shall not be deemed accepted until [RWT] has run an
adequate test to determine whether the [the equipment]
conform[s] to the specifications hereof."  Def. Opp. CSF, Ex. 2
(ECF No. 43-2) at 3.[3]  The force majeure clause says, "neither
party shall be liable for any failure to perform . . . caused by
circumstances beyond its control . . . including . . .
government action."  Def. Opp. CSF, Ex. 2 (ECF No. 43-2) at 3.
The terms in Comment to Section 2.5.1 in the Proposal,
therefore, relate to <u>Plaintiff's</u> inspection and testing of the

_____

[2] Plaintiff also discusses Section 7.3 in the Proposal,
which discusses Plaintiff's testing obligations.  Plaintiff CSF,
Ex. F (ECF No. 33-10) at 23.
    [3] In Section I.A of its Motion, Plaintiff states that it
provided the equipment in conformity with the contract
requirements.  To support this assertion, Atlas discusses terms
in the Proposal, the government specifications of the Project,
and performance certificates that Plaintiff provided to RWT,
which are discussed by Plaintiff's Expert, John R. Fessler, in
his declaration.
    However, none of what Plaintiff discusses demonstrates that
RWT has had an opportunity to inspect the equipment and
therefore accept it.  As discussed herein, the Proposal terms
and performance certificates relate to <u>Plaintiff's</u> inspection
and testing of the equipment <u>before</u> RWT received it, whereas the
inspection provision in the General Terms and Conditions of Sale
in the Purchase Order relates to whether <u>RWT</u> has run an adequate
test to determine whether the equipment conforms to
specifications <u>after</u> they received it.

equipment <u>before</u> RWT received it, whereas the General Terms and Conditions of Sale in the Purchase Order relate to whether <u>RWT</u> has run an adequate test to determine whether the equipment conforms to specifications <u>after</u> RWT received it.[4]

Second, the contract at issue here is for the sale of goods, which is governed by the UCC rather than common law principles of contract interpretation.[5] <u>See</u> Utah Code § 70A-2-102 ("Unless the context otherwise requires, this chapter applies to transactions in goods . . ."); <u>Hilsen v. Am. Sleep All., LLC</u>, No. 2:15-CV-00714-DBP, 2016 WL 3948065, at *3 (D. Utah July 19, 2016) (applying Utah law and stating that the UCC

---

[4] Because, as discussed herein, the Court does not find Plaintiff's argument regarding Comment to Section 2.5.1 of the Proposal persuasive, it need not address Defendants' argument regarding the UCC's battle of the forms.  Opposition at 11-13.  The Court, however, notes that Defendants' argument regarding Section 2-207 of the UCC is not applicable here because the circumstances that invoke Section 2-207 are not present.  <u>See</u> Timothy Davis, <u>UCC Section 2-207: When Does an Additional Term Materially Alter a Contract?</u>, 65 Cath. U.L. Rev. 489, 493-95 (2016) (describing contractual behavior that invokes Section 2-207).  The evidence before the Court does not demonstrate that the parties' exchanged form contracts or conveyed different terms in their offer and acceptance.  Rather, RWT sent Plaintiff a purchase order, which attached General Terms and Conditions of Sale, which Plaintiff and RWT signed and accepted.  Def. Opp. CSF, Ex. 2 (ECF No. 43-2) at 2.  The purchase order said that Plaintiff "is to provide the following list of materials in accordance with the plans, specifications, RFI's, amendments, and Atlas Copco quote #23880365/0 dated 3/13/2014."  Def. Opp. CSF, Ex. 2 (ECF No. 43-2) at 1.  Plaintiff then manufactured and shipped the equipment.

[5] Utah law governs the terms of the Purchase Order.  <u>See</u> Def. Opp. CSF, Ex. 2 (ECF No. 43-2) at 1, 3-4.

applies to contracts for the sale of goods); see also Prime

Start Ltd. v. Maher Forest Prod., Ltd., 442 F. Supp. 2d 1113,

1121 (W.D. Wash. 2006) (applying Washington law and stating that

"[t]he Uniform Commercial Code applies to sales of goods, while

the common law of contracts governs services agreements").[6]

Neither of the contracts in Hoffman or Aramony was for the sale

of goods.

Third, none of the provisions at issue here feature

the broad language discussed in Aramony.  Fourth, the cases

Plaintiff cites involve different provisions in one contract,

whereas the provisions here are in two agreements.  Last,

neither of the cases Plaintiff cites involves boilerplate

provisions.   Therefore, the Court did not commit clear legal

error in finding that the inspection provision in the Purchase

Order applied.[7]

---

[6] See also Sung v. Hamilton, 676 F. Supp. 2d 990, 1001 (D. Haw. 2009) ("In a contract for goods and services, courts look to the primary purpose of the contract in order to determine whether or not to apply the common law or the UCC."); TK Power, Inc. v. Textron, Inc., 433 F. Supp. 2d 1058, 1061 (N.D. Cal. 2006) ("The UCC applies to transactions in goods . . . The UCC does not apply to transactions involving service.  Complications arise when the transaction involves both goods and services. The courts have held application of the UCC in these instances turns on the essence of the agreement." (internal quotation marks and citations omitted)).

[7] Plaintiff also argues that the Court's decision to apply the inspection and force majeure clauses instead of the Comment to Section 2.5.1 is "no different from the choice the Court implicitly made when it ruled on the one-year statute of (continued . . . )

## ii.    Whether <u>Weststar Eng'g</u> Controls

Second, Plaintiff argues that the Court erred in

limitations" because "despite the disparity between the shipment/delivery terms of the Proposal and the Purchase Order, the course of conduct disclosed the parties' true contractual intentions . . . [for] the terms of the Proposal [to] prevail over RWT's General Terms and Conditions."  Motion at 13-14.

In making this argument, however, Plaintiff makes several misstatements and mischaracterizations of the Court's May 17, 2017 Order.  First, the Court did not determine that either the terms of the Purchase Order or the terms of the Proposal prevailed over the other when it ruled on the statute of limitations issue.  In fact, the Court did not primarily look at the parties' contract to determine the statute of limitations issue.  May 17, 2017 Order at 10.  Instead, the Court held that "the issue before the Court is . . . a question of the Miller Act's statutory construction."  <u>Id.</u> at 11.  After the Court analyzed the Miller Act's plain meaning and related case law, the Court then also held that contract provisions supported its interpretation.  <u>Id.</u> at 15.

Second, Plaintiff states that the Court ruled that the one-year statutory period began on May 11, 2015, when RWT's trucking company took possession of the equipment.  Motion at 13-14.  However, the May 17, 2017 Order stated that the <u>earliest</u> the equipment was supplied was when RWT's trucking company took delivery of the equipment on May 11, 2015.  May 17, 2017 Order at 9, 15.

Third, Plaintiff states that there was a disparity between the contract terms in the Proposal and the contract terms in the Purchase Order.  However, the provisions Plaintiff discusses do not involve the same issue.  The terms in the Proposal involve Plaintiff's "delivery obligations," whereas the terms in the Purchase Order involve when title to the goods passes to RWT and where the goods should be shipped.

Fourth, Plaintiff states that in making a choice between the "disparity" previously discussed, the Court found that the parties' course of conduct disclosed their true contractual intentions.  The Court's May 17, 2017 Order, however, did not look at the parties' course of conduct to determine the parties true contractual intentions when examining the statute of limitations issue.  As previously discussed, the Court primarily examined the Miller Act's statutory construction.  Accordingly, because of these misstatements and mischaracterizations, the Court does not find Plaintiff's argument convincing.

failing to find Weststar Eng'g controlling here.  In Atlas's
Reply Memorandum on its Motion for Summary Judgment, Atlas
argued, "For a contractual provision in a subcontract/supply
contract to prevent a subcontractor or supplier from pursuing
its Miller Act remedy . . . for a completed delivery of
materials or equipment, the subject provision must amount to a
'clear and explicit waiver of the subcontractor/supplier's
Miller Act rights.'  Such is not the case here."  ECF No. 45 at
11-12 (citing United States ex rel. Walton Tech., Inc. v.
Weststar Eng'g, Inc., 290 F.3d 1199 (9th Cir. 2002); United
States ex rel. Youngstown Welding & Eng'g, Co. v. Travelers
Indem. Co., 802 F.2d 1164 (9th Cir. 1986)).

        In the Court's May 17, 2017 Order, the Court held that
"neither of these cases addresses the specific issue here, which
as previously discussed, does not concern a 'paid when and if
paid' clause or whether the contract language constituted a
waiver of the supplier's right to bring a Miller Act claim.
Furthermore, in this case, the inspection provision does not
directly controvert the Miller Act's terms or discuss the timing
of recovery."  May 17, 2017 Order at 23.

        Given Plaintiff's reliance on Weststar Eng'g in the
instant Motion, the Court discusses the case in more depth here
than it did in the May 17, 2017 Order.  In Weststar Eng'g,
Weststar was a subcontractor on a federal project.  290 F.3d at

14

1201.  Weststar subcontracted with Walton to rent a fabric and
frame shroud called the sail system to cover a crane.  Id. at
1202.  Although the rental period was originally scheduled to
end in September 1996, various delays prevented Weststar from
completing the project on schedule.  Id.  By the end of October
1996, Walton claimed that Weststar was delinquent on rental fees
and payment for other services in the amount of $108,000 and
filed a breach of contract action, alleging that Weststar had
breached the subcontract in the purchase order by failing to
make timely payment.  Id.  Shortly thereafter, Weststar and
Walton entered into settlement negotiations.  Id.

        In January 1997, the parties entered into a settlement
agreement which provided for, inter alia, the continuation of
the rental period for the sail system under the original
purchase order subcontract and payment for settlement of all
disputes and lawsuits existing at the time of the agreement's
execution.  Id. at 1203.  The settlement agreement also provided
the terms under which Weststar would be obligated to make future
payments to Walton.  Id.  Future payment would be subject to the
following provision, "Any further payment to Walton for the
framing and fabric rental shall only be made when and if paid by
the Navy and only to the extent paid by the Navy . . ."  Id.
(emphasis in original).  The parties also affirmed their
continuing rights under the original purchase order, except as

15

modified by their settlement agreement.

Weststar paid Walton for rental fees for January 1997 but made no further payments even though it continued to use the sail system until the end of December 1997. Weststar disassembled the Sail System and shipped it back to Walton at the end of January and beginning of February 1998. Id. In April 1998, Walton filed an action under, inter alia, the Miller Act against Weststar and its surety for the unpaid rental fees through the end of December 1997. Id. Defendants argued that they were not liable to pay Walton under the Miller Act because the "pay when and if paid" clause contained in the Settlement Agreement had not been satisfied because they had not been paid by the Navy and there were no sums justly due for which Walton was required to recover under the Miller Act. Id. at 1204.

The Ninth Circuit held that the unsatisfied "paid when and if paid" clause contained in the settlement agreement could not serve as a defense to liability on the Miller Act claim because "to permit a Miller Act surety and its principal to avoid liability on this basis would prevent a subcontractor from exercising its Miller Act rights in the absence of a 'clear and explicit' waiver of those rights." Id. at 1204-05. The Court further held that "where subcontract terms effecting the timing of recovery or the right of recovery under the Miller Act, enforcement of such terms to preclude Miller Act liability

contradict the express terms of the Miller Act." Id. at 1207

(citing U.S. ex rel. T.M.S. Mech. Contractors, Inc. v. Millers

Mut. Fire Ins. Co. of Texas, 942 F.2d 946, 949 n.6 (5th Cir.

1991) (holding that a "paid-when-paid" clause does not preclude

a subcontractor's right of recovery under the Miller Act payment

bond because "[t]he federal legislation conditions payment of

the subcontractor not on payment by the government to the

contractor, but rather on the passage of time from completion of

the work or provision of materials")).

          The Ninth Circuit reasoned that a subcontractor's

right on a Miller Act payment bond accrues ninety days after the

subcontractor has completed its work, not "when and if" the

prime contractor is paid by the government.  Id. at 1208.  The

Ninth Circuit stated:

> Walton has performed its obligations under
> the subcontract and waited the requisite
> ninety days.  Permitting Defendants to avoid
> liability on the Miller Act payment bond
> based on the unsatisfied "pay if and when
> paid" clause in the Subcontract Agreement
> would prevent Walton from exercising its
> rights in accordance with the express terms
> of the Miller Act.  It would, in effect,
> transform Walton's agreement concerning
> Weststar's contractual obligations into an
> implied waiver of Walton's rights under the
> Miller Act.  Thus, the validity of
> Defendants' defense depends on whether the
> "pay when and if paid" clause constitutes a
> valid waiver of Walton's Miller Act rights.

Id.  The Ninth Circuit ultimately held that the "paid when and

if paid" clause did not constitute a valid waiver of Walton's

Miller Act rights because, <u>inter alia</u>, it did not feature a

clear and explicit waiver of the supplier's Miller Act rights.

<u>Id.</u> at 1208-09.

Weststar Eng'g is distinguishable from the present

case for the following reasons.  First, the subcontract terms

here do not directly affect the timing or right of recovery

under the Miller Act as the "paid when and if paid" clause did

in <u>Weststar Eng'g</u>.  The inspection provision does not directly

controvert the Miller Act's terms or discuss the timing or right

of recovery.  The provision does not discuss when or whether a

party can bring a claim.  Instead, as previously discussed, the

inspection provision provides that RWT shall have a reasonable

time after it receives the equipment to inspect it for

conformity with the parties' agreement, and Plaintiff's

performance shall not be deemed accepted until RWT has run an

adequate test to determine whether the equipment conforms to the

agreement's specifications.  <u>See</u> Def. Opp. CSF, Ex. 2 (ECF No.

43-2) at 3.

Second, the contract clause at issue here relates to

the core of the parties' agreement—whether the equipment has

been accepted.  On the contrary, the "paid when and if paid"

clause structures payment for the materials after they had been

accepted and used.  Third, as the Court previously stated in its

18

May 17, 2017 Order, the question at issue in the present case does not concern whether the contract language constituted a waiver of the right to bring a Miller Act Claim.  May 17, 2017 Order at 23.  Instead, the question at issue on Plaintiff's Motion for Summary Judgment was "whether Plaintiff can establish Miller Act liability, even though Defendants have been unable to accept the materials."  Id. at 21.

The Court again relies on its legal conclusions and the line of case law provided in its May 17, 2017 Order to explain why Plaintiff cannot establish such liability.  See id. at 18 ("[U]nder the circumstances of this case, pursuant to the parties' contract, Plaintiff must demonstrate that the contract provision regarding inspection of the equipment has been satisfied to establish a Miller Act claim.  Cases have required proof of compliance with contract terms to establish Miller Act liability.  See, e.g., Jefferson Const. Co. v. United States ex rel. of Bacon, 283 F.2d 265, 267 (1st Cir. 1960) (holding that failure to plead or prove compliance with the underlying contract and fulfillment of conditions precedent therein precluded summary judgment); United States ex rel. Purity Paint Products Corp. v. Aetna Casualty & 19 Surety Co., 56 F. Supp. 431, 432 (D. Conn. 1944) (holding that a supplier of paint to a subcontractor "must prove not only that he furnished [material] but also that the [material] furnished was in accordance with

19

his contract").").[8]

The Court notes that the Ninth Circuit's broad language in <u>Weststar Eng'g</u> regarding contract terms effecting the "right of recovery" can potentially be read to apply to the current case.[9]  However, for the reasons previously discussed, including the difference between the contract provision at issue in <u>Weststar Eng'g</u> (which conditioned payment to a subcontractor upon the prime contractor first being paid) and the contract provisions at issue here (which conditioned the prime

---

[8] Plaintiff also argues that Defendants were required to submit a declaration stating that installation was the only way to determine that the air compressors conformed to the contract. Defendants, however, provided such declaration from its expert Arthur Faherty.  <u>See</u> Faherty Decl. (ECF No. 42-2) ¶ 10.  In addition, under the holding in the previous excerpt from the Court's May 17, 2017 Order, Plaintiff must establish proof of compliance with contract terms to establish Miller Act liability.  Plaintiff has not provided evidence for the Court to conclude that RWT had an opportunity to inspect the equipment and therefore accept it after they received it.  Evidence that Plaintiff gave Defendants test certificates is insufficient pursuant to this provision, which states that RWT must have the opportunity to inspect the equipment after receipt.

[9] The Court specifically is referring to the previously discussed language in <u>Weststar Eng'g</u> which states, "where subcontract terms effecting the timing of recovery or the right of recovery under the Miller Act, enforcement of such terms to preclude Miller Act liability contradict the express terms of the Miller Act."  <u>Weststar Eng'g</u>, 290 F.3d at 1207 (citing <u>U.S. ex rel. T.M.S. Mech. Contractors, Inc. v. Millers Mut. Fire Ins. Co. of Texas</u>, 942 F.2d 946, 949 n.6 (5th Cir. 1991) (holding that a "paid-when-paid" clause does not preclude a subcontractor's right of recovery under the Miller Act payment bond because "[t]he federal legislation conditions payment of the subcontractor not on payment by the government to the contractor, but rather on the passage of time from completion of the work or provision of materials")).

contractor's acceptance of the equipment upon the prime

contractor receiving the equipment and being able to test and

inspect the equipment), the Court does not find any reason why

it would.  Furthermore, neither of the parties has presented and

the Court is unaware of a case applying the rule in Weststar

Eng'g in a context similar to the present case.  Therefore, the

Court, again, does not find Weststar Eng'g persuasive here.[10]

Accordingly, the Court did not commit clear legal error in

finding that Weststar Eng'g was not controlling.

**b. Manifest Injustice**

Plaintiff argues that the Court's application of the

---

[10] Plaintiff discusses United States v. Zurich Am. Ins. Co., 99 F. Supp. 3d 543 (E.D. Pa. 2015) for the proposition that under the Miller Act, a subcontractor can waive its Miller Act rights only after it has furnished labor or material for use in the performance of the contract.  In Zurich, the court denied Defendants' motion to dismiss, holding that a provision in the parties agreement to pursue any claims through an administrative dispute resolution process set forth in the prime contractor's contract with the government prior to bringing suit on the bond was not a waiver of Plaintiff's Miller Act rights.  Id. at 546-49.  Given the difference in procedural posture and the different contract provisions at issue, the Court finds this case distinguishable.
The Court also does not find Plaintiff's argument regarding United States ex rel. DDC Interiors, Inc. v. Dawson Const. Co., 895 F. Supp. 270 (D. Colo. 1995), aff'd, 82 F.3d 427 (10th Cir. 1996) convincing.  In Dawson, the Court, inter alia, held that a "paid when and if paid" clause was not a waiver of a Miller Act claim.  Id. at 274.  However, as previously discussed, the Court does not find the "paid when and if paid" authority controlling in the present case.  The Court also does not find Plaintiff's argument regarding Dawson's discussion of the Miller Act's legislative history and purpose persuasive in the present case for those same reasons.

inspection and force majeure clauses will result in manifest injustice because Plaintiff has been waiting nearly two years for full payment of the purchase price for the goods it supplied and has been forced to saddle the risk of the suspension of work order.  Motion at 15.  Plaintiff, however, has received a payment of the vast majority of the amount due—$1.749 million of the approximate $2 million purchase price.  Plaintiff's suit is for the remaining balance of $281,785.52.

In addition, Defendants have stated that RWT will install the equipment and conduct a test to verify that it operates in conformity with the contract specifications as soon as the government lifts the suspension of work.  Defendants' Memorandum in Opposition to Plaintiff's Motion for Summary Judgment (ECF No. 42) at 8 n.2.  The most recent suspension of work provided to the Court states that the period of suspension will end on July 31, 2017.  Def. Opp. CSF, Ex. 5 (ECF No. 43-5). Defendants state that if the equipment passes inspection, they will accept it and issue the remaining balance due under the contract.  Defendants' Memorandum in Opposition to Plaintiff's Motion for Summary Judgment (ECF No. 42) at 8 n.2.  Accordingly, the Court does not find that Plaintiff has demonstrated that manifest injustice will result from its May 17, 2017 Order.

## II.  Motion for Interlocutory Appeal

As an alternative to reversal of the court's prior

holding, Plaintiff seeks certification for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) and a stay pending that appeal.  Because the Court denies Plaintiff's Motion for Reconsideration, it next discusses Plaintiff's Motion for Interlocutory Appeal.  Defendants did not oppose Plaintiff's Motion for Interlocutory Appeal.  Certification for interlocutory appeal is appropriate where (1) the order involves a controlling question of law; (2) a substantial ground for difference of opinion exists; and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation.  28 U.S.C. § 1292(b).  The Court discusses whether each element has been met in turn.

### a. Whether the Order Involves a Controlling Question of Law

Plaintiff argues that the order involves a controlling question of law—"whether a supplier to a federal project may be forced to bear the risk of a suspension of work on that project by contractual clauses such as inspection and force majeure provisions in the subcontract or supply contract."  Motion at 16-17.

A question of law is controlling if the resolution of the issue on appeal could "materially affect the outcome of litigation in the district court."  In re Cement Antitrust Litig., 673 F.2d 1020, 1026 (9th Cir. 1981).  A question of law

under § 1292(b) means a "pure question of law" rather than a
mixed question of law and fact or the application of law to a
particular set of facts.  Chehalem Physical Therapy, Inc. v.
Coventry Health Care, Inc., No. 09-CV-320-HU, 2010 WL 952273, at
*3 (D. Or. Mar. 10, 2010) (collecting cases); see also McFarlin
v. Conseco Servs., LLC, 381 F.3d 1251, 1259 (11th Cir. 2004)
(Section "1292(b) appeals were intended, and should be reserved,
for situations in which the court of appeals can rule on a pure,
controlling question of law without having to delve beyond the
surface of the record in order to determine the facts"); Oliner
v. Kontrabecki, 305 B.R. 510, 529 (N.D. Cal. 2004) ("Because the
alleged 'controlling questions of law' raised by Kontrabecki are
inextricably intertwined with the bankruptcy court's factual
findings, an interlocutory appeal is not appropriate."); In re
Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig., 212 F.
Supp. 2d 903, 907 (S.D. Ind. 2002) (stating that a question of
law is one that presents an abstract legal issue that can be
decided quickly and cleanly without having to study the record).

        Questions of law appropriate for interlocutory appeal
include "'the determination of who are necessary and proper
parties, whether a court to which a cause has been transferred
has jurisdiction, or whether state or federal law should be
applied.'"  In re Cement Antitrust Litig., 673 F.2d at 1026
(quoting United States v. Woodbury, 263 F.2d 784, 787 (9th Cir.

1959)).

The Court finds that Plaintiff's proposed question of law—"whether a supplier to a federal project may be forced to bear the risk of a suspension of work on that project by contractual clauses such as inspection and force majeure provisions in the subcontract or supply contract"—is unclear and imprecise.  In addition, this question seems to be a broader question of public policy relating to the Court's May 17, 2017 Order and the Miller Act rather than a legal question. Therefore, the Court finds that Plaintiff has failed to meet the heavy burden necessary to warrant an interlocutory appeal based on this question.

However, the Court finds that a controlling question of law exists from Plaintiff's Motion for Reconsideration.  As previously discussed, Plaintiff presents two main legal issues in his Motion for Reconsideration: (1) whether Comment to Section 2.5.1 in the Proposal, as opposed to the General Terms and Conditions of Sale in the Purchase Order, control as a matter of law; and (2) whether Weststar Eng'g is controlling authority in the present case.  The first issue is not a controlling question of law because the Ninth Circuit has held that the interpretation of contract terms is a mixed question of law and fact.  See Klamath Water Users Protective Ass'n v. Patterson, 204 F.3d 1206, 1210 (9th Cir. 1999) ("The

interpretation of a contract is a mixed question of law and fact
. . ." ).

However, the Court finds that whether the holding in
Weststar Eng'g can be extended to apply to the inspection and
force majeure clauses in the General Terms and Conditions of
Sale in the Purchase Order at issue here is a controlling
question of law.  The determination of such issue will impact
the ultimate disposition of the case.  Notwithstanding new
factual developments and legal theories that have not been
presented to the Court, Plaintiff will be able to proceed to a
money judgment and the case may end if the Ninth Circuit were to
extend Weststar Eng'g's holding to the present case.  On the
contrary, if the Ninth Circuit agrees with the Court and
declines to extend Weststar Eng'g in the present case, Plaintiff
would be unable to prove its Miller Act claim until such time as
the Navy permits work to be resumed and RWT is able to perform
an adequate test to determine whether the equipment conforms to
the contract specifications and thereby accept the equipment.

The Ninth Circuit would not need to delve beyond the
surface of the record to determine the facts.  Rather, this
question presents an abstract legal issue that can be decided
quickly and cleanly without the Ninth Circuit having to study
the record.  The Ninth Circuit would not need to resolve any
factual disputes.  The Ninth Circuit would merely need to

examine the inspection and force majeure clauses and the factual context in which they are relevant here, and determine whether its holding in Weststar Eng'g extends to this context. Accordingly, the Court finds that Plaintiff has satisfied the first element required to grant an interlocutory appeal.

### b. Whether a Substantial Ground for Difference of Opinion Exists

There is a "substantial ground for difference of opinion" if "there is a genuine dispute over the question of law that is the subject of the appeal." In re Cement Antitrust Litig., 673 F.2d at 1026. Such a dispute exists, for example, if the circuits are in disagreement and the court of appeals in which the district court sits has not decided the issue, the issue involves complicated questions of foreign law, or the issue is a novel and difficult one of first impression. Couch v. Telescope Inc., 611 F.3d 629, 633 (9th Cir. 2010). "However, just because a court is the first to rule on a particular question or just because counsel contends that one precedent rather than another is controlling does not mean" that sufficient grounds exist. Id.

Put another way, a substantial ground for difference of opinion exists when novel legal issues are presented, on which reasonable minded jurists might reach contradictory conclusions. Reese v. BP Exploration (Alaska) Inc., 643 F.3d

681, 688 (9th Cir. 2011).  "A party's strong disagreement with
the Court's ruling is not sufficient for there to be a
'substantial ground for difference'; the proponent of an appeal
must make some greater showing."  Kowalski v. Anova Food, LLC,
958 F. Supp. 2d 1147, 1154 (D. Haw. 2013).  That settled law
might be applied differently does not establish a substantial
ground for difference of opinion.  Couch, 611 F.3d at 633.

        As previously discussed, neither of the parties has
presented and the Court is unaware of a case applying the rule
in Weststar Eng'g in a context similar to the present case.
Therefore, whether Weststar Eng'g's holding can be extended to
apply to the facts of the current case is a novel legal issue.
In addition, despite the Court's holding that Weststar Eng'g is
distinguishable here for the reasons previously discussed, the
Court finds that given the broad language from Weststar Eng'g,
which states that "where subcontract terms effecting the timing
of recovery or the right of recovery under the Miller Act,
enforcement of such terms to preclude Miller Act liability
contradict the express terms of the Miller Act," reasonable
minded jurists might reach a contradictory conclusion.  The
Court, therefore, finds that Plaintiff has met the second
element necessary to establish that an interlocutory appeal is
warranted.

### c. Whether the Proposed Interlocutory Appeal Will Materially Advance the Ultimate Termination of the Litigation

A district court generally should not permit an interlocutory appeal where it would prolong litigation rather than advance its resolution.  Fenters v. Yosemite Chevron, 761 F. Supp. 2d 957, 1005 (E.D. Cal. 2011).  Courts within the Ninth Circuit have held that resolution of a question materially advances the termination of litigation if it "facilitate[s] disposition of the action by getting a final decision on a controlling legal issue sooner, rather than later [in order to] save the courts and the litigants unnecessary trouble and expense."  See United States v. Adam Bros. Farming, Inc., 369 F. Supp. 2d 1180, 1182 (C.D. Cal. 2004); see also In re Cement Antitrust Litig., 673 F.2d at 1026 (stating that § 1292(b) is used "only in exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation").

Plaintiff argues that the proposed interlocutory appeal will materially advance the litigation, either by "allowing [Plaintiff] to proceed to a money judgment or by encouraging the parties to settle (whether before or after the appellate ruling and regardless of who might prevail on appeal)."  Motion at 18.  The Court agrees.  An appeal at this juncture might also prevent a later retrial of Plaintiff's

29

Miller Act claim.

The Court notes that the Navy has suspended work on the Project, and Plaintiff states that there is no indication when, if ever, the Navy will lift the suspension.  Motion at 15. The unique circumstances of this case, therefore, leaves Plaintiff in a predicament in which it is unclear when Plaintiff will be able to appeal this Court's order—if it is not allowed an interlocutory appeal.

Accordingly, having found that all three requirements for an interlocutory appeal are met, the Court grants Plaintiff's unopposed Motion for Interlocutory Appeal.  The Court grants certification of an interlocutory appeal based on the following question: whether Weststar Eng'g's holding can be extended to apply to the inspection and force majeure clauses in the General Terms and Conditions of Sale in the Purchase Order at issue here.

**III.  Stay of Proceedings Pending Interlocutory Appeal**

The Court has authority to stay proceedings during interlocutory appeal pursuant to 28 U.S.C. § 1292(b), both under § 1292(b) itself, see Watson v. Yolo Cty. Flood Control and Water Conservation Dist., No. 2:06-cv-1549 FCD DAD, 2007 WL 4107539, *2 (E.D. Cal. Nov. 16, 2007), and its inherent authority to manage its docket.  See Asis Internet Servs. v. Active Response Grp., No. C07 6211 TEH, 2008 WL 4279695, at *3

30

(N.D. Cal. Sept. 16, 2008).  Plaintiff's Motion to Stay the
Action pending Interlocutory Appeal is unopposed.

When considering a stay pending appeal pursuant to §
1292(b), the Court has "broad discretion to decide whether a
stay is appropriate to 'promote economy of time and effort for
itself, for counsel, and for litigants.'"  Ass'n of Irritated
Residents v. Fred Schakel Dairy, No. 1:05-CV-00707 OWW SMS, 2008
WL 2899912, *11 (E.D. Cal. July 22, 2008) (quoting Filtrol Corp.
v. Kelleher, 467 F.2d 242, 244 (9th Cir. 1972)); see
Mediterranean Enters., Inc. v. Ssangyong Corp., 708 F.2d 1458,
1465 (9th Cir. 1983) ("A trial court may, with propriety, find
it is efficient for its own docket and the fairest course for
the parties to enter a stay of an action before it, pending
resolution of independent proceedings which bear upon the case."
(internal quotation marks and citation omitted)).

To determine whether to grant a stay, the court must
weigh the following factors: (1) the possible damage which may
result from the granting of a stay; (2) the hardship or inequity
which a party may suffer in being required to go forward; and
(3) the orderly course of justice measured in terms of the
simplifying or complicating of issues, proof, and questions of
law which could be expected to result from a stay.  Rollins v.
Dignity Health, No. 13-CV-01450-TEH, 2014 WL 6693891, at *4

31

(N.D. Cal. Nov. 26, 2014).[11]

First, the Court finds that any harm to Defendants from granting a stay is minimal.  Defendants will merely suffer continued uncertainty in the litigation.  Second, given the quickly approaching trial date, which is currently scheduled for September 6, 2017, an interlocutory appeal makes little sense without a stay of proceedings.  If the case goes forward while an appeal is pending, both parties may undergo unnecessary time and expense in preparing for trial or in engaging in settlement discussions over a claim that may be resolved on appeal. Therefore, moving forward with this action would largely thwart the purpose of the grant of interlocutory appeal.

Third, the current interlocutory appeal will allow the Ninth Circuit to conclusively establish the requirements for Plaintiff's Miller Act claim and allow for the orderly course of justice.  Accordingly, the Court grants Plaintiff's motion to stay the case pending the interlocutory appeal.

---

[11] The Court notes that there is a division in the Ninth Circuit regarding the appropriate standard by which a district court is to exercise its discretion in whether to grant a stay pending an interlocutory appeal.  See Finder v. Leprino Foods Co., CASE NO. 1:13-CV-02059-AWI-BAM, 2017 WL 1355104, at *2 (E.D. Cal. Jan. 20, 2017) (explaining the standards applied by district courts in the Ninth Circuit in determining whether to grant a stay pending the resolution of an interlocutory appeal). The Court notes that application of the different tests would not result in a different outcome here.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court DENIES Plaintiff's Motion for Reconsideration, ECF No. 51. The Court GRANTS Plaintiff's Motion for Interlocutory Appeal and Stay Pending that Appeal, ECF No. 51.

This action is STAYED pending the Ninth Circuit's decision on whether to accept the interlocutory appeal. Should the Ninth Circuit permit such appeal, this action is further STAYED pending the issuance of a dispositive order on Plaintiff's interlocutory appeal.

The Court DIRECTS Plaintiff to inform the Court within 7 days of the Ninth Circuit's decision on whether to permit an appeal, and if applicable, the Ninth Circuit's ultimate resolution of the interlocutory appeal.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, July 13, 2017



_____
Alan C. Kay
Sr. United States District Judge

<u>Atlas Copco Compressors LLC v. RWT LLC et al.</u>, Civ. No. 16-00215, Order Denying Plaintiff's Motion for Reconsideration and Granting Plaintiff's Motion for Interlocutory Appeal and Stay Pending that Appeal